IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**BRIAN DUNNIGAN,**

    **Movant,**

v.                                         **Case No. 2:17-cv-02748**
                                          **Criminal Case No. 2:15-cr-00139**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's Motion and Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody, (ECF Nos. 53, 54), and Movant's Petition for Summary Judgment, (ECF No. 65).[1] This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **RECOMMENDS** that the presiding district judge **DENY** Movant's motions as untimely; **DENY** his petition as being without merit; **DISMISS** this civil action, with prejudice; and remove the case from the docket of the Court.

**I.**      **Factual and Procedural Background**

In July 2015, a federal grand jury returned a five-count indictment, which charged

---

[1] The ECF citations in this PF&R reference Movant's criminal case number: 2:15-cr-00139.

1

Movant Brian Dunnigan ("Dunnigan") with conspiracy to distribute and possession with intent to distribute heroin and methamphetamine, as well as possession of a firearm by a convicted felon. (ECF No. 15). Dunnigan entered into a plea agreement with the United States in which he pled guilty to a single count of possession with intent to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (ECF No. 33). In exchange for Dunnigan's guilty plea, the United States agreed to dismiss the remaining counts in the indictment. (*Id.*). In the plea agreement, Dunnigan acquiesced to a base offense level of 30 under the United States Sentencing Guidelines (the "Guidelines"). (*Id.* at 4). He acknowledged his understanding that the Court and Probation Office were not bound by that calculation, and even if the Court determined a different base offense level under the Guidelines, Dunnigan was still bound by the terms of the plea agreement. (*Id.* at 5). As part of the agreement, Dunnigan stipulated to the facts comprising the offense of conviction and the relevant conduct for that offense, including that he had distributed methamphetamine and heroin totaling between 1,000 and 3,000 kilograms of marijuana equivalency during the relevant time period. (*Id.* at 8-9). Dunnigan also knowingly and voluntarily waived his right to collaterally attack his conviction or sentence except on the ground of ineffective assistance of counsel. (*Id.* at 5). On September 1, 2015, the Court held a hearing in accordance with Rule 11 of the Federal Rules of Criminal Procedure and accepted Dunnigan's guilty plea. (ECF No. 35).

At sentencing, the Court started with a base offense level of 30 and applied a three-point reduction in Dunnigan's offense level due to his acceptance of responsibility, decreasing his offense level to 27. (ECF Nos. 42, 43). Taking into account Dunnigan's cooperation with law enforcement and substance abuse history, the Court then applied a downward variance of three levels, resulting in a final offense level of 24. (ECF No. 45 at

5). Given Dunnigan's criminal history category, the range of imprisonment under the Guidelines was 92 to 115 months. (*Id.*). The Court sentenced Dunnigan to 96 months of imprisonment. (*Id.*). The judgment was imposed on December 22, 2015. (ECF No. 44).

Dunnigan did not directly appeal his conviction or sentence. However, on March 1, 2017, he sought an extension of time to file a § 2255 motion, which the Court denied. (ECF Nos. 48, 49). Nevertheless, on March 17, 2017,[2] Dunnigan filed a motion under § 2255, seeking to be resentenced, which he followed with an identical motion filed in May 2017. (ECF Nos. 50, 51, 53, 54). Dunnigan contends in these motions that the Court should have applied the three-level reduction for acceptance of responsibility from a base offense level of 24, not the level of 30 that was used, because he only possessed five to 200 grams of methamphetamine rather than the greater amount attributed to him. (ECF No. 54; ECF No. 63 at 3).

The United States filed a response to Dunnigan's § 2255 motion, which states that the motion should be dismissed for three reasons. First, the United States contends that Dunnigan's motion is untimely under the one-year period of limitations established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 58). Second, the United States argues that Dunnigan's § 2255 motion is subject to dismissal because Dunnigan waived his right to collaterally attack his sentence except on the basis of ineffective assistance of counsel, which is not alleged in his motion. (*Id.*). Third, the

---

[2] Pursuant to the "prison mailbox rule," the undersigned uses the date on which Movant gave the motion to the correctional facility for mailing as the date of filing, rather than the date on which the clerk of court docketed the motion. *United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013) ("pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.'") (citing *Houston v. Lack*, 487 U.S. 266, 266 (1988)). When Dunnigan initially filed the motion, he did not date the certificate of service, but the envelope was postmarked March 27, 2017. (ECF No. 50). Dunnigan later refiled his motion with a completed certificate of service, which he dated March 17, 2017. The envelope to that motion was postmarked May 1, 2017. (ECF Nos. 51). Allowing Dunnigan every benefit of the doubt, the earliest date on which he filed his § 2255 motion was March 17, 2017.

3

United States asserts that even if Dunnigan's motion were not barred by the AEDPA limitations period and the waiver provision in his plea agreement, it is without merit because Dunnigan expressly agreed that his base offense level was 30; therefore, the Court properly applied a three-level reduction for acceptance of responsibility from 30 and then varied downward three levels, resulting in an offense level of 24. (*Id.*).

In reply to the government's response, Dunnigan claims for the first time that the relief that he seeks in his § 2255 motion is based upon the ground of ineffective assistance of counsel, as well as newly discovered evidence. (ECF No. 60). Dunnigan again argues that his offense level was increased due to drug quantities in addition to the four ounces of methamphetamine that he possessed at the time of his arrest. (*Id.* at 1-2). Dunnigan further alleges that his appointed criminal defense attorney was constitutionally ineffective by coercing him into signing a plea agreement that was not in his best interests, by failing to properly advise him of the consequences of doing so, and by failing to challenge the calculation of his offense level contained in the presentence report. (*Id.* at 3-4).

Dunnigan also filed what he titled a "Supplement Brief Response" in which he advises the Court that he was unjustly sentenced for distribution of methamphetamine, rather than possession of methamphetamine. (ECF No. 61). Dunnigan subsequently filed a "Response to Government's Response," stating that he was held accountable for conduct contained in counts of the indictment that were dismissed. (ECF Nos. 62, 63). Dunnigan again contends that his counsel was ineffective in his advice about the benefits of entering into the plea agreement and stipulation. (ECF No. 63). Finally, Dunnigan filed a Petition for Summary Judgment Under Federal Rule of Criminal Procedure 56, (ECF No. 65), indicating that there are no genuine issues of material fact and he is entitled to judgment

4

in his favor based upon the principles of plain error, ineffective assistance of counsel, and newly discovered evidence.

II. **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Pursuant to the Rules Governing Section 2255 Proceedings, the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, and 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

III. **Discussion**

The United States asserts that Dunnigan's motion should be dismissed because it

5

is untimely, barred by a collateral attack waiver, and substantively without merit. Given that Dunnigan's motion is plainly barred by the AEDPA's one-year limitations period, the undersigned need not address the other grounds for dismissal.

Under the AEDPA, a § 2255 motion must be filed within one year of the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In this case, Dunnigan was required to file his § 2255 motion within one year of the date on which his judgment became final under 28 U.S.C. § 2255(f)(1). The other three starting dates under 28 U.S.C. § 2255(f)(2)-(3) are inapplicable for the following reasons. First, Dunnigan does not allege that he was prevented from filing his action due to government action. Therefore, 28 U.S.C. § 2255(f)(2) does not apply to his case. Second, Dunnigan does not establish a newly recognized right or newly discovered evidence that applies to his claims such as to implicate 28 U.S.C. § 2255(f)(3) or (4). Dunnigan cites two decisions issued by the Supreme Court of the United States ("Supreme Court"), which he contends constitute "newly discovered evidence:" *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016), and *Nelson v. Colorado*, 137 S. Ct. 1249 (2017). However, these decisions are not "evidence," nor do they establish a newly recognized right made

6

retroactively applicable to cases on collateral review.

In *Molina-Martinez*, a district court sentenced a defendant to what it believed to be the lowest end of the Guidelines range. *Molina-Martinez*, 136 S. Ct. at 1340. In fact, the court had incorrectly calculated the Guidelines range, such that the sentence imposed actually fell in the middle of the correct range. *Id.* Although the error was recognized on appeal, the appellate court refused to correct the sentence because "petitioner could not establish a reasonable probability that but for the error he would have received a different sentence." *Id.* at 1341. The appellate court concluded that since the sentence he received fell within the correct Guidelines range, the defendant had to identify "additional evidence" to show that using the incorrect Guidelines range actually affected his sentence in order to succeed on appeal. *Id.* Reversing this judgment, the Supreme Court held that courts reviewing Guidelines errors may not apply a categorical "additional evidence" rule in cases where a district court applies an incorrect range, but still sentences a defendant within the correct range. *Id.*

Dunnigan contends that *Molina-Martinez* applies to his situation, because it stands for the proposition that "'a [p]lain error that effects substantial rights may be considered even though it was not brought to the courts [sic] attention' and even if the sentencing judge goes outside the guidelines range." (ECF No. 54 at 1; ECF No. 62 at 1). Clearly, the facts of the *Molina-Martinez* case bear no resemblance to those in the instant action. Moreover, the ruling really has no application to the issues in this matter, because Dunnigan is arguing that a Guidelines range well below the range used by the sentencing court should have been applied. Nonetheless, even if the *Molina-Martinez* decision could be interpreted to apply to Dunnigan's case in some manner, 28 U.S.C. § 2255(f)(3) is still not satisfied, as *Molina-Martinez* does not recognize a new right made retroactive to cases

on collateral review. *See, e.g., United States v. Hoyt*, No. 2:14-CR-00001-1, 2016 WL 3884707, at *2 (W.D. Va. July 13, 2016) (stating that *Molina-Martinez* did not recognize a new right that applies retroactively to cases on collateral review); *Suggs v. Saad*, No. 2:16-CV-58, 2017 WL 1862468, at *7 (N.D.W. Va. May 9, 2017) (stating that *Molina-Martinez* does not apply retroactively).

In *Nelson*, the second case cited by Dunnigan, a defendant's conviction was reversed for trial error; the defendant was retried and acquitted on all charges. *Nelson v. Colorado*, 137 S. Ct. 1249, 1250 (2017). In between the conviction and acquittal, money was withheld from the defendant's inmate account for costs, fees, and restitution. *Id*. The defendant was not refunded her money pursuant to a state statute, which required her to file a civil proceeding and show by clear and convincing evidence that she was innocent in order to recoup her money. *Id*. The Supreme Court held that such scheme offended the Fourteenth Amendment's guarantee of due process and that when a criminal conviction is invalidated, the defendant is presumed innocent and the state must refund the defendant's money taken in connection with the conviction. *Id*. at 1252. Dunnigan argues that the *Nelson* decision prohibits the district court from considering "dismissed or even uncharged conduct" when imposing a sentence. (ECF No. 63 at 1-2). He claims that he was penalized at sentencing for "drug quantities and relevant conduct" that enhanced his sentence beyond the Guidelines range appropriate for the offense of conviction. (*Id*. at 3).

Dunnigan's argument is without merit. In *United States v. Watts*, 519 U.S. 148 (1997), the Supreme Court "held that a sentencing court can consider acquitted conduct in calculating a sentence as long as the conduct has been proven by a preponderance of the evidence." *Minor v. Coakley*, No. 2:17-CV-133, 2018 WL 4871131, at *3 (N.D.W. Va. Oct. 9, 2018) (citing *Watts,* 519 U.S. 148 (1997)). By logical extension, the sentencing

8

court may also consider evidence of criminal acts not contained in the indictment but relevant to the offense of conviction. *United States v. Jinwright*, 683 F.3d 471, 484 (4th Cir. 2012). *Watts* remains the prevailing law on relevant conduct. *See Wilborn v. Joyner*, No. 0:18-CV-01565-DCN, 2018 WL 5839549, at *5 (D.S.C. Nov. 8, 2018) (noting that many lower courts agree that *Nelson* does not overrule *Watts* and collecting cases); *also Minor*, 2018 WL 4871131, at *3 (holding that *Nelson* does not overrule *Watts,* because they do not address the same issue).

The foregoing Supreme Court cases are simply inapplicable to the claims in Dunnigan's § 2255 motion and do not affect the one-year period of limitations under the AEDPA. Therefore, turning to the relevant dates under 28 U.S.C. § 2255(f), Dunnigan's judgment of conviction was imposed on December 22, 2015. (ECF No. 44). He had fourteen days to file a notice of appeal, but declined to do so. Fed. R. App. P. 4(b)(1)(A)(i). Accordingly, the AEDPA period of limitation began on January 6, 2016 and expired on January 5, 2017. Dunnigan did not file his § 2255 motion until March 17, 2017. As such, his motion is untimely and must be dismissed unless the Court applies the doctrine of equitable tolling to his case.

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has long recognized that the AEDPA statute of limitations can be tolled in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Supreme Court established in *Holland v. Fla.*, 560 U.S. 631, 649 (2010), that equitable tolling should only be extended when a habeas petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way and prevented timely filing."

Absent from Dunnigan's multiple filings in response to the United States' request for dismissal is a discussion regarding the timeliness of his motion. Of note, he does not adduce any argument that the AEDPA time period should be equitably tolled. Dunnigan previously asked the Court in February 2017 for an extension of time to file his § 2255 motion and, in that motion for an extension, he asserted that he was in lockdown in prison and was then in transit without "proper equipment to file" the motion. (ECF No. 48). The record reflects that in November 2016, Dunnigan apparently was not in lockdown, as he corresponded with the Court to request that legal materials be made available to a third-party. (ECF No. 47). Dunnigan stated that he arrived at his current place of incarceration in the middle of December 2016, but that he had to wait an additional three weeks for his personal property and legal materials. (*Id.*). He provides no other information about his circumstances between January 2016 and January 2017.

Considering this information under an equitable tolling analysis, Dunnigan fails to meet his burden of demonstrating that extraordinary circumstances prevented his timely filing despite his diligent efforts. Dunnigan makes no showing that he diligently pursued his rights, and courts have routinely concluded that prison lockdowns, transfers, and lack of access to legal materials like the conditions alleged by Dunnigan do not warrant equitable tolling. *See, e.g., Harris v. United States*, No. 2:11-CR-00240, 2017 WL 6638207, at *3 (S.D.W. Va. Dec. 29, 2017) ("Petitioner does not provide any evidence that the lock-downs at his institution have had such a negative effect on him that enforcement of the limitations period would be unconscionable, or that the lockdowns took place at all."); *Gaylord v. Johnson*, No. ELH-14-2734, 2016 WL 1258432, at *3 (D. Md. Mar. 31, 2016) ("Moreover, courts have found lockdowns are incidental to prison life and do not

10

amount to extraordinary circumstance necessary to warrant equitable tolling.") (collecting cases); *Golden v. Perry*, No. 1:14-CV-129, 2014 WL 7409587, at *5 (M.D.N.C. Dec. 31, 2014), *report and recommendation adopted sub nom. Golden v. North Carolina*, 2015 WL 457941 (M.D.N.C. Feb. 3, 2015) ("Courts generally do not recognize the difficulties inherent in prison life, such as segregation, lockdowns, or transfers, as grounds for equitable tolling.") (collecting cases); *United States v. Johnson*, No. 7:08-CR-00024-1, 2010 WL 348015, at *2 n.3 (W.D. Va. Jan. 28, 2010) ("Where a petitioner claims that the transfer interfered with law library access, or access to his personal legal papers while in transit, courts consistently hold that such results of prison transfers are not extraordinary for the purposes of equitable tolling.") (collecting cases); *Blue v. United States*, No. 7:11-CR-135-D, 2019 WL 361130, at *2 (E.D.N.C. Jan. 29, 2019) ("[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation.") (citations omitted). Accordingly, the undersigned does not conclude that Dunnigan's case is one of the rare instances in which it would be unconscionable to enforce the AEDPA limitations period against him. Therefore, the undersigned **FINDS** that Dunnigan's § 2255 motions are untimely, and his circumstances do not justify the application of equitable tolling.

In addition to being untimely, Dunnigan's motions suffer from other defects that are fatal to his request for resentencing. "The writ of habeas corpus and its federal counterpart, 28 U.S.C. § 2255, will not be allowed to do service for an appeal. For this reason, nonconstitutional claims that **could** have been raised on direct appeal, but were

11

not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477, n.10, (1976) (emphasis in original) (citing *Sunal v. Large*, 332 U.S. 174, 178-79 (1947)). Generally, challenges to the sentencing court's Guidelines calculations should be raised on direct appeal and are procedurally defaulted unless the movant can show "cause and actual prejudice from the errors of which he complains." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)). Dunnigan cannot satisfy this requirement. Not only did he waive his right to appeal the sentence as long as it fell at or below the range corresponding to Guidelines offense level 30, but he can show no error in sentencing. Dunnigan stipulated to the drug amount used to calculate his base offense level and to the base offense level of 30. The three-level deduction for acceptance of responsibility was appropriately taken from the base offense level, and then Dunnigan was given the benefit of a downward variance. Therefore, Dunnigan's motions are meritless.

The undersigned notes that Dunnigan attempts to add an ineffective assistance of counsel claim in his September 20, 2017 reply to Respondent's response. (ECF No. 60). Not coincidentally, Dunnigan's first mention of ineffective assistance of counsel comes after Respondent reminds Dunnigan that he waived his right to file a § 2255 motion *except* on ground of ineffective assistance of counsel. Although Dunnigan does not properly move for leave to amend his petition, it is of no consequence, because this claim—first raised more than eight months after expiration of the AEDPA's one-year limitations period—is clearly untimely. Assuming that Dunnigan will attempt an argument that his ineffective assistance of counsel claim relates back to his initial petition, such an argument is not persuasive. Dunnigan's Sixth Amendment claim relates to his counsel's actions and focuses on plea negotiations and presentence activities. His original petition made a

12

straightforward claim that the Court committed error in its Guidelines calculation. Thus, the second claim does not arise from the same core facts asserted in the original petition and is separate in time and type; consequently, it does not relate back. *See Mayle v. Felix,* 545 U.S. 644, 657 (2005) (holding that habeas claims added by amendment relate back to the original petition only when they "arise from the same core facts … and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."); *also United States v. Pittman,* 209 F.3d 314, 318 (4th Cir. 2000) ("The fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c). If we were to craft such a rule, it would mean that amendments to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence. Such a broad view of 'relation back' would undermine the limitations period set by Congress in the AEDPA."). Dunnigan can certainly show no justification for delaying an additional six months after initiating this proceeding to raise his ineffective assistance of counsel claim. Therefore, the undersigned concludes that these additional claims are also untimely. Given that Dunnigan's § 2255 motions are untimely, the undersigned **FINDS** that his petition for summary judgment should be dismissed as meritless.

### IV. Proposal and Recommendations

The undersigned respectfully **PROPOSES** that the presiding district judge confirm and accept the foregoing findings and **RECOMMENDS** that the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (ECF Nos. 53, 54), be **DENIED** as untimely, that his petition for summary judgment, (ECF No. 65), be **DENIED** as meritless, and that this action be **DISMISSED,** with

prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:** February 12, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge